United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KATHRYN LOEWEN,**<br>Plaintiff,<br>vs.<br>**JOHN MCDONNELL, III, ET AL.,**<br>Defendants. | CASE NO. 19-cv-00467-YGR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 45 |

Plaintiff Kathryn Loewen brings this action against defendants John McDonnell III ("John McDonnell"), The McDonnell Group, LLC ("TMG"), John "Jack" McDonnell II ("Jack McDonnell"), Tony VanBrackle, Michael Bradley, Gary Bender, and Carneros Bay Capital LLC, in connection with the alleged theft of her start-up company, Control Mobile, Inc. ("Control"). (Dkt. No. 1 ("Compl.").)

Now before the Court is defendants' motion to compel arbitration and to dismiss pursuant to the Federal Arbitration Act ("FAA"), on grounds that the claims asserted in the complaint arise from and are inextricable related to Control's March 19, 2015 Amended and Restated Shareholder Agreement. (Dkt. No. 45 ("Motion").) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motion to compel arbitration and **DENIES** the motion to dismiss. The Court further **ORDERS** that the case shall be **STAYED** pending the completion of arbitration.[1]

**I.  BACKGROUND**

**A.  Plaintiff's Allegations**

The complaint alleges as follows:

In 2013, plaintiff began developing a payment analytics program that would allow businesses to access aggregated transaction analytics in real-time without the need for coding or a

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for decision without oral argument.

team of developers and data scientists to monitor and analyze the information. (Compl. ¶¶ 15-16.) In May 2014, plaintiff founded and incorporated Control, the company that would launch the payment analytics platform which plaintiff developed. (*Id*. ¶ 16.)

Over the next several years, in addition to investing her own money and time into the company, plaintiff raised more than $3 million (CAD) in outside equity funding to further grow the company. (*Id*. ¶¶ 17-22.) On May 19, 2015, plaintiff formed Control's Board of Directors, and a Shareholder Agreement was executed by its members. (*Id*. ¶ 22.) VanBrackle, an early investor in Control, became a member of the Board and accordingly, a signatory to the Shareholder Agreement, pursuant to which he owed fiduciary duties to Control and its shareholders and agreed to not disclose confidential information concerning Control to persons outside the company. (*Id*. ¶¶ 18, 22-23.)

On June 7, 2016, VanBrackle introduced plaintiff to John McDonnell. (*Id*. ¶ 25.) At VanBrackle's urging, and based upon John McDonnell's representations about his ability to raise capital, John McDonnell was permitted by the Board to invest in Control. (*Id*. ¶¶ 26, 29-36.) John McDonnell became a member of the Board of Directors on March 29, 2017, and in June 2017, was appointed Chief Operating Officer. (*Id*. ¶ 37.) As an officer and director of Control, John McDonnell became a party to the Shareholder Agreement, and thus owed the same fiduciary duties to plaintiff and the company as all other directors and officers. (*Id*.)

John McDonnell failed to raise capital from outside investors as promised, leaving Control in an untenable financial position. (*Id*. ¶¶ 38-40.) The Board, relying on false representations by John McDonnell, approved a $400,000 (CAD) line of credit from TMG, John McDonnell's family's business, of which Jack McDonnell served as managing partner. (*Id*. ¶¶ 6, 43-44.) In subsequent months, John McDonnell, together with VanBrackle and Bradley, who had been hired as an advisor to Control, orchestrated a scheme to take advantage of plaintiff's personal difficulties and Control's precarious financial condition to obtain control over the company and its assets. (*Id*. ¶¶ 69, 71.) This conduct culminated in John McDonnell and TMG foreclosing on the line of credit, placing Control into receivership in Canada, where John McDonnell and TMG purchased it for pennies on the dollar. (*Id*. ¶¶ 159-62, 164-71.)

Plaintiff now alleges that defendants conspired to steal Control from her. Specifically, plaintiff alleges that VanBrackle, John McDonnell, and Bradley violated their fiduciary duties to plaintiff and the company by, among other things, diminishing the value of the company so that it could be taken over by TMG. (*Id*. ¶¶ 143-44.)[2] Plaintiff further alleges that the non-director and non-officer defendants acted in concert with and aided and abetted the officer and defendant directors in breaching their fiduciary duties. (*Id*. ¶ 146.)

**B.     The Shareholder Agreement**

The Shareholder Agreement, to which plaintiff, McDonnell, and VanBrackle were parties, includes a mandatory arbitration provision requiring "Dispute[s]" to be "settled by arbitration under the International Commercial Arbitration Rules of the Procedure of the British Columbia International Commercial Arbitration Centre" ("BCICAC"). (Dkt. No. 45-1 ("McDonnell Decl."), Ex. 1, § 8.6; Dkt. No 45-2 ("VanBrackle Decl."), Ex. 1, § 8.6.) The agreement defines "Dispute[s]" as "any dispute, disagreement, controversy, or claim between the parties with respect to the interpretation of any provision of this Agreement, any amounts due hereunder, or the breach, termination, or invalidity thereof[.]" (McDonnell Decl., Ex. 1, § 8.5; VanBrackle Decl., Ex. 1, § 8.5.)

Notably, the BCICAC rules, which are expressly incorporated in the arbitration provision, state, in relevant part, that "[t]he arbitral tribunal may rule on its own jurisdiction, including ruling on any objections with respect to the existence or validity of the arbitration agreement[.]" (Dkt. No. 46, Ex. 1, Art. 15(1).)[3]

---

[2] The Court notes that certain paragraphs in the complaint under the header "First Cause of Action" are mis-numbered. To be clear, this decision's citation to paragraphs 143, 144 and 146, refers to paragraphs that appear on page 41 of the complaint.

[3] Defendant's request for judicial notice of the BCICAC rules (Dkt. No. 46, Ex. 1) and plaintiff's request for judicial notice of the American Arbitration Association's rules (Dkt. No. 47-1, Ex. 1) are **GRANTED**. *See* Fed. R. Evid. 201(b) (courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Kag West, LLC v. Malone*, No. 15-cv-03827-TEH, 2015 WL 6693690, at *5 (N.D. Cal. Nov. 3, 2015) (noticing arbitration rules in granting motion to compel arbitration). Plaintiff's and defendant's respective requests for judicial notice of documents filed in the British Columbia courts (Dkt. No. 47-1, Exs. 2-4; Dkt. No. 49) are **DENIED** as **MOOT**.

The Shareholder Agreement applies to "the Shareholders and [Control] and any other person that becomes party to this Agreement" (McDonnell Decl., Ex. 1 at 3; VanBrackle Decl., Ex. 1 at 3), as well as "any shares . . . of [Control] or any successor body corporate that may be received by the Shareholders on a merger, amalgamation, arrangement or other reorganization of or including the Corporation." (McDonnell Decl., Ex. 1, § 8.1; VanBrackle Decl., Ex. 1 § 8.1.) The Shareholder Agreement also states that it "enures to the benefit of and is binding upon the respective heirs, executors, administrators, successors and permitted assigns of the Parties." (McDonnell Decl., Ex. 1, § 8.8; VanBrackle Decl., Ex. 1 § 8.8.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") covers agreements "evidencing a transaction involving commerce," with "commerce" defined as "commerce among the several States or with foreign nations." 9 U.S.C. §§ 1, 2.[4] Under the FAA, "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The court's role in addressing a question of arbitrability generally is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157

---

[4] Although plaintiff does not dispute that the arbitration agreement is covered by the FAA, plaintiff contends that state law also applies, at least in part, to the Court's analysis of the Shareholder Agreement. (Dkt. No. 47 at 9.) Specifically, plaintiff avers that state law governs issues concerning validity, revocability, and enforceability of contracts, while federal law governs the scope of arbitration agreements. (*Id.*, quoting *Shivkov v. Artex Risk Sols. Inc.*, Case No. 18-CV-04514-PHX-SMM (D. Ariz.), Dkt. No. 84.) As explained herein, however, the Court does not reach issues of validity, revocability, or enforceability as it concerns the Shareholder Agreement.

4

United States District Court
Northern District of California

1 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody 'a liberal federal policy favoring arbitration.'") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA broadly provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Once a court is satisfied the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4.

**III. DISCUSSION**

**A. The Shareholder Agreement's Delegation Clause**

As a threshold matter, given the rules of the BCICAC, the Court must determine whether the parties are bound by an arbitration clause that delegates questions of arbitrability to the arbitrator.

Generally, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Certain issues, however, are presumptively reserved for the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). However, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Howsam*, 537 U.S. at 83 (citation omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Defendant argues that the incorporation of the BCICAC rules constitutes "clear and unmistakable" evidence that the parties delegated questions of arbitrability to the arbitrator. (Motion at 6.) Plaintiff counters that BCICAC rules permit, but do not mandate, arbitrators to rule on arbitrability, and thus, the Court must rule on questions of arbitrability in this case. (Dkt. No. 47 ("Opp.") at 11-12.) The parties have not identified, nor is the Court aware of, any case law from a United States court analyzing delegation clauses under the BCICAC rules. (*See* Motion at

5

6; Opp. at 11-12.) Defendants urge an analysis by analogy to the American Arbitration Association ("AAA") rules. (Motion at 6.) Plaintiff, for her part, argues that the AAA rules and the BCICAC rules are meaningfully different, and that the BCICAC rules do not delegate arbitrability questions to the arbitrator. (Opp. at 11.)

The AAA rules provide, in relevant part, that an "arbitrator **shall have the power** to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Dkt. No. 47-1, Ex. 1, R-7, emphasis supplied.) The Ninth Circuit has held that "when the parties have incorporated by reference the rules of the American Arbitration Association ("AAA"), which state in relevant part that the 'arbitrator shall have the power to rule on his or her own jurisdiction . . . ," the parties have "clearly and unmistakably" delegated questions issues of arbitrability to the arbitrator. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

By contrast, the BCICAC's rules provide that "[t]he arbitral tribunal **may rule** on its own jurisdiction." (Dkt. No. 46, Ex. 1, Art. 15(1), emphasis supplied.) Use of the word "may" is frequently viewed as more permissive than the word "shall" because it could be read as giving the arbitrator authority to decide *or* not to decide on issues of arbitrability. However, defendants cite numerous cases from courts in other jurisdictions indicating that the phrase "may rule" is functionally equivalent to the phrase "shall have the power to rule." (*See* Dkt. No. 48 ("Reply") at 6, citing *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72-73 (2d Cir. 2012) ("Article 21 of those rules provides [that] [t]he arbitral tribunal shall have the power to rule on objections that it has no jurisdiction. . . . Section 4 provides that '[t]he Tribunal may consider . . . objections to jurisdiction,' which is entirely consistent with and parallel to the language in Article 21."); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) ("Rule 7(a) says plainly that the arbitrator may 'rule on his or her own jurisdiction' including any objection to the 'existence, scope or validity of the arbitration agreement.' This is about as 'clear and unmistakable' as language can get[.]"); *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 397 (2d Cir. 2018) ("Rule 7 of the 2013 Commercial Arbitration Rules provides that an arbitrator may 'rule on his or her own

6

jurisdiction['].... The language ... clearly leaves the class arbitration question to an arbitrator.").)[5]

Likewise, many courts, including at least one in this circuit, have held that the incorporation of even a permissive delegation clause is clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. *See, e.g., ASUS Computer Int'l v. InterDigital, Inc.*, No. 15-CV-01716-BLF, 2015 WL 5186462, at *4 (N.D. Cal. Sept. 4, 2015) ("[T]he parties agreed to arbitration under the ICDR rules, . . . and these rules allow an arbitrator to decide arbitrability. . . . Several courts have held that even when an arbitration clause uses permissive language, the clause still gives rise to mandatory arbitration."); *Amway Glob. v. Woodward*, 744 F. Supp. 2d 657, 664 (E.D. Mich. 2010) (rule that arbitrability disputes "may be submitted to and ruled on by the Arbitrator" served as clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); *Avue Techs. Corp. v. DCI Grp., L.L.C.*, No. CIV.A. 06-327 (JDB), 2006 WL 1147662, at *7 (D.D.C. Apr. 28, 2006) ("[E]ven assuming that the rule is, as Avue contends, permissive in nature, the arbitrator would still be the proper entity to decide whether the TCS Agreement is subject to arbitration."). Plaintiff has not cited any contrary authority arising in a similar context.[6]

---

[5] *See also Gemini Ins. Co. v. Certain Underwriters at Lloyd's London*, No. CV H-17-1044, 2017 WL 1354149, at *6 (S.D. Tex. Apr. 13, 2017) ("There is no meaningful difference between the phrase 'shall have the power to rule on' and the phrase 'may rule on.' Each indicates the same idea: the arbitrator has the power to decide arbitrability."); *Townsend Ventures, LLC v. Hybrid Kinetic Grp. Ltd.*, No. CV GLR-17-130, 2017 WL 3730345, at *4 (D. Md. Aug. 30, 2017) ("The Court discerns no difference between rules stating that an arbitral tribunal 'shall have to the power to' determine arbitrability and stating that an arbitral tribunal 'may' determine arbitrability. In both instances the rules provide that the arbitral tribunal has the authority to determine arbitrability.").

[6] In addition, defendant has identified Canadian case law indicating that under the laws of the Province of British Columbia, questions of arbitrability generally are reserved for the arbitrator. (Motion at 5, n.5.) Specifically, defendant cites to *Seidel v. Telus Commc'ns., Inc.*, [2011] 1 S.C.R. 531 (Can.), in which the Canadian Supreme Court held as follows:

> British Columbia has adopted the competence-competence principle through the combined operation of s. 22 of the *CAA* and Rule 20(2) of the BCICAC Rules which in turn reflect the provisions of the New York Convention and Model Law. As such, ***"[t]he jurisdiction to determine jurisdiction is given to the arbitral tribunal by statute, as well as by the rules of arbitration used by most institutions"***: see J. B. Casey and J. Mills, *Arbitration Law of Canada: Practice and Procedure* (2005), at p. 147.

The Court is persuaded by the prevailing view that the "incorporat[ion] [of] rules that empower an arbitrator to decide issues of arbitrability . . . serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator," even though the BCICAC rules use the word "may." *Clarium Capital Management. LLC v. Choudhury*, Nos. C 08-5157SBA, 06-5255, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009); *see also Johnson v. Oracle America, Inc.*, No. 17-cv-05157-EDL, 2017 WL 8793341, at *7 (N.D. Cal. Nov. 17, 2017) (finding that incorporation of rules that are "very similar to . . . AAA jurisdictional rules" constitutes "clear and unmistakable delegation"). Accordingly, whether the Shareholder Agreement is valid and whether this dispute falls within its scope are questions for the arbitrator, not this Court, to decide.[7]

### B. Defendant's Request for Dismissal

Next, the Court addresses defendants' contention that because plaintiff's claims are subject to arbitration, dismissal is proper. (Motion at 14.) Having not reached the gateway questions of arbitrability, and instead finding that such questions are delegated to the arbitrator, the Court finds that dismissal of plaintiff's claims at this juncture would be inappropriate.

In the alternative, defendant requests that the Court stay the action pending resolution of the arbitration. (Motion at 14, n.11.) With respect to a stay of proceedings, the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, ***upon being satisfied that the***

---

I agree with my colleagues LeBel and Deschamps JJ. (at para. 114) that in these circumstances, absent legislated exception, ***any challenge to an arbitrator's jurisdiction over [plaintiff]'s dispute with [defendant] should first be determined by the arbitrator***, unless the challenge involves a pure question of law, or one of mixed fact and law that requires for its disposition "only superficial consideration of the documentary evidence in the record" (*Dell*, at para. 85). See also, *Unifund Assurance Co. v. Insurance Corp. of British Columbia*, 2003 SCC 40, [2003] 2 S.C.R. 63, at paras. 37-38.

(emphasis supplied.)

[7] Plaintiff's remaining arguments (survivability, waiver, unclean hands) will be decided by the arbitrator in the course of determining the arbitrability of the dispute or are premature for the Court to address until the arbitrator has so determined.

*issue involved in such suit or proceeding is referable to arbitration* under such an agreement, ***shall on application of one of the parties stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied); *see also BrowserCam, Inc. v. Gomez, Inc.*, No. 08-CV-02959-WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (it is "within a district court's discretion whether to stay, 'for [c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).  Accordingly, the Court stays this action pending a decision on arbitrability by an arbitrator.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendant's motion to compel arbitration and **DENIES** defendant's motion to dismiss.  The Court further **STAYS** this action pending the completion of arbitration.

In addition, the Court **SETS** this matter for a compliance hearing on **January 17, 2020**, at **9:01 a.m.** in Courtroom 1 of the United States Courthouse located at 1301 Clay Street in Oakland, California.  Five (5) business days prior to the date of the compliance hearing, the parties shall file a joint statement regarding the status of arbitration.  If compliance is complete, the parties need not appear, and the compliance hearing will be taken off calendar.

**IT IS SO ORDERED.**

Dated: September 13, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**